**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| FRELANDRA WOMACK, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 3:26-cv-00105-JJV |
| | * | |
| HOLLY RING, Sergeant | * | |
| McPherson Unit, ADC | * | |
| | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

Plaintiff Frelandra Womack has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging that on June 12, 2024, Sergeant Holly Ring racially discriminated against her by throwing away and taking some of her personal property during intake at the McPherson Unit, while not doing the same to similarly situated prisoners. (Doc. 2.) All other claims have been dismissed without prejudice. (Doc. 17.)

Defendant Ring has filed a Motion for Summary Judgment, Reply, and Supplemental Declaration arguing the case should be dismissed without prejudice because Plaintiff failed to properly exhaust her available administrative remedies. (Docs. 29-31, 45, 50.) Plaintiff has filed a Response and Sur-Reply. (Docs. 35-38, 49.) After careful consideration and for the following reasons, I find Defendant's Motion should be DENIED.

## II. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record viewed in the light most favorable to the nonmoving party demonstrates there is no genuine dispute as to any material fact and the

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III. DISCUSSION

### A. Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is

the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.* The only exception is if administrative remedies are unavailable. 42 U.S.C. § 1997e(a). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016); *see also Hamby v. Iowa*, 185 F.4th 816, 824 (8th Cir. 2026); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

**B. ADC's Grievance Procedure**

Administrative Directive 19-34 (AD 19-34) establishes a three-step procedure for exhausting administrative remedies in any ADC Unit. (Doc. 29-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (*Id.* at § IV(E)(1)). The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at § IV(E)(2)). Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id.* § IV(C)(4)). And the grievance form reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond,

the inmate must file a formal grievance within three working days. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the Warden's or Health Service Administrator's response to the grievance, or who does not timely receive a response, must appeal within five working days to the Deputy Director. (*Id.* § IV(F)(9).) And that response ends the grievance process. (*Id.*)

### C. Plaintiff's Grievances

The Corrections Program Coordinator says in her sworn Declaration Plaintiff filed only two relevant grievances: MCS-24-009 and MCP-25-119. (Doc. 29-1.)

#### 1. MCS-24-009 and MCP-25-119

On July 12, 2024, Plaintiff filed MCS-24-009 alleging Sergeant Ring wrongfully seized her property a month earlier on June 12, 2024.[1] (Doc. 29-3.) And on February 14, 2025, she filed MCP-25-119 repeating those allegations. (Doc. 29-4.) The parties agree prison officials rejected both grievances without addressing the merits because Plaintiff did not file them "within 15 days after the occurrence of the incident" as required by AD 19-34 § IV(E)(1).[2] (Doc. 29-2 at 6.) Because Plaintiff did not receive a final ruling on the merits, neither grievance properly exhausted the claim she is attempting to raise in this lawsuit. *See Woodford*, 548 U.S. at 90 (proper exhaustion means "using all steps that the agency holds out, and doing so properly"); *Perry v. Precythe*, 121 F.4th 711, 714 (8th Cir. 2024) (proper exhaustion is "when an inmate has used and properly followed all required steps" of the prison grievance procedure); *Porter v. Sturm*, 781 F.3d

---

[1] Plaintiff did not specifically mention racial discrimination in either grievance. But, if the prison's administrative remedies were unavailable, then any procedural defects are immaterial. *Smith v. Andrews,* 75 F.4th 805, 809 (8th Cir. 2023). As will be explained later, I find there is a genuine issue of material fact as to whether administrative remedies were unavailable.

[2] The fifteen-day deadline for Plaintiff to file a grievance about the June 12, 2024 incident was June 27, 2024.

448, 451-52 (8th Cir. 2015) (to properly exhaust, the prisoner must pursue the grievance to the final stage and obtain a ruling on the merits).

**2. Unnumbered Informal Resolutions**

Plaintiff says she filed two additional informal resolutions about the June 12, 2024 seizure of her property on July 5, 2024 and February 13, 2025.[3] (Doc. 2 at 15, 23.) Although Defendant has not addressed that assertion, I note both informal resolutions were filed after the fifteen-day deadline of June 27, 2024. Additionally, there are no grievance numbers on the forms indicating that they were received by the Warden's office at step two. Plaintiff says Defendant Ring interfered with her attempts at exhaustion by refusing to respond to these two informal resolutions. (Docs. 35-38.) But, AD 19-34 § IV(E)(11) allowed and required Plaintiff to proceed to the next step when she did not timely receive a response, which is something she properly did in both MCS-24-009 and MCP-25-119. (Doc. 29-3, Doc. 29-4). Accordingly, I find those two informal resolutions did not exhaust Plaintiff's claim against Defendant Ring because they were untimely filed, and Plaintiff did not obtain rulings on them at steps two or three.

**3. Unavailability**

Plaintiff makes several arguments as to why administrative remedies were unavailable to properly exhaust her claims. First, the parties agree Plaintiff was housed in the Mental Health Residential Program Unit (RPU) from her June 12, 2024 intake through July 24, 2024. (Doc. 35, Doc. 45-9; Doc. 45-10.) Plaintiff claims she could not meet the June 27, 2024 grievance deadline because she was on twenty-three hour lockdown while in the RPU. (Doc. 35 at 5.) However, the record contradicts her assertion. Specifically, Deputy Warden Moss says in his sworn Declaration

[3] An informal resolution does not have a formal grievance number until it is received, at step two, by the Warden's office. *See* AD 19-34 § IV(F)(3) (Doc. 29-2 at 9).

that inmates in the RPU are permitted to file grievances and may request assistance from the RPU Supervisor to do so. (Doc. 45-10.) And, Plaintiff filed grievance MCS-24-009 on July 12, 2024 - while still housed in the RPU - demonstrating that she was able to file grievances while held there. (Doc. 29-3.)

Second, Plaintiff says she was unaware of the fifteen-day deadline because a copy of the grievance procedure was unavailable in the RPU. (Doc. 35 at 5; Doc. 38 at 4.) However, Officer Odom's sworn declaration says that during intake she gave Plaintiff an Inmate Handbook detailing the ADC's grievance procedure, including the fifteen-day deadline. (Doc. 45-8 at 15–16; Doc. 50.) Importantly, both Officer Odom and Plaintiff signed an Inmate Orientation Form on June 12, 2024, acknowledging Plaintiff's receipt of the "Inmate Handbook" and the "Inmate Grievance Procedures." (Doc. 45-7.) Although Plaintiff's says in her unsworn Sur-Reply that she signed the form without reading it and that the facility had gone "paperless" making it impossible for her to have received copies of the Handbook or Grievance Procedure (Doc. 49 at 1–2), she offers no affidavit or evidence to rebut Officer Odom's contrary sworn testimony. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (at summary judgment, a respondent cannot rely on mere allegations but must meet proof with proof). Finally, Plaintiff's filing of roughly 135 grievances (Doc. 45-5) during a prior incarceration (2015 - 2021) at the McPherson Unit establishes her familiarity with the ADC grievance process. *See Hammett v. Cofield*, 681 F.3d 945, 948-49 (8th Cir. 2012) (prisoner's previous use of grievance procedures demonstrated that he understood the process).

Third, Plaintiff makes the conclusory statement that administrative remedies were unavailable because she was "mentally incapacitated" while in the RPU. (Doc. 38 at 4; Doc. 40.) However, Plaintiff has not provided any facts or evidence explaining what mental condition she

suffered or why it made it impossible for her to timely file a grievance. To the contrary, it is undisputed that on July 12, 2024, Plaintiff was mentally able to file an informal resolution while she was still in the RPU.

Finally, Plaintiff says it was impossible for her to timely file a grievance because she did not learn what Defendant Ring had done with her property until after the June 27, 2024 deadline passed. (Doc. 49.) Plaintiff raises a good point here. In her Sur-Reply and verified Complaint,[4] Plaintiff says that during the June 12, 2024 intake, Officer Ring took all of her personal property without saying what would happen to it. (Docs. 2, 49.) On July 5, 2024, Plaintiff filed an informal resolution asking what Defendant Ring and Corporal Chandler (non-party) had done with her property. (Doc. 2 at 15.) In response, Corporal Chandler came to Plaintiff's cell on July 9, 2024, gave her three property forms they both signed documenting what clothing was taken during intake, and allowed Plaintiff to mail it home. (*Id.* at 6, 15-17.) When Plaintiff asked about the rest of her seized property, Corporal Chandler told her to ask Officer Ring. (*Id.* at 6.) Plaintiff says this was the first time she learned all of her property had not been properly inventoried and stored. (*Id.*) Thereafter, on July 12, 2024, Plaintiff filed MCS-24-009 asking if Officer Ring had thrown away the remainder of her property without permission.[5] (Doc. 29-3.) However, prison officials rejected that grievance without addressing the merits because it was untimely filed. (Doc. 29-2 at 6.)

In *Perry v. Precythe*, 121 F.4th 711, 714-15 (2024), a Missouri prisoner was not able to file a grievance within a fifteen-day deadline because he was in a coma. The Eighth Circuit held

---

[4] A verified complaint, signed under penalty of perjury, is the equivalent of an affidavit for summary judgment purposes. *See Presson v. Reed*, 65 F.4th 357, n. 2 (8th Cir. 2023).

[5] Specifically, Plaintiff said her purse, black tote bag, legal papers, state identification card, bankcard, personal checks, hygiene items, and a book were missing. (Doc. 29-3.)

that because it was impossible for the prisoner to have timely filed a grievance and the prison's rules did not allow him to do so later, administrative remedies were "unavailable" to him. *Id.* Here, Plaintiff has come forward with evidence suggesting she was unable to comply with the fifteen-day deadline because she did not know Officer Ring had improperly dispensed with her property until after the deadline had passed. *See Ross*, 578 U.S at 642 (an administrative remedy is "available" when it is "capable of use"). And, similar to *Perry*, the ADC's grievance procedure did not provide a mechanism for Plaintiff to file a grievance after she first learned of the alleged constitutional violation. To the contrary, Plaintiff's attempts at doing so were rejected by prison officials. Defendant has not addressed Plaintiff's argument here or offered any contrary evidence. Because there remains a genuine issue of material fact as to whether administrative remedies were available to Plaintiff to properly exhaust her equal protection claim, I conclude Defendant Ring is not entitled to summary judgment. *See Hamby v. Iowa,* 185 F.4th 816, 825 (8th Cir. 2026) (summary judgment is inappropriate when a prisoner's declaration contained specific allegations creating a genuine issue of material fact as to unavailability).

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1. Defendant's Motion for Summary Judgment (Doc. 29) is DENIED.

2. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal would not be taken in good faith.

Dated this 9th day of November 2026.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE